## DAVID QUICK

*v.*

## THE INDIANAPOLIS AND ST. LOUIS RAILWAY COMPANY.

*Filed at Springfield October 31, 1889.*

1. RAILROADS—*cars undergoing repairs—rule requiring signals to be placed upon them, for protection of servant—the rule construed.* A rule of a railway company required its yardmasters to see that the yards be kept in good order, and that cars passing should be properly inspected, and that all cars requiring serious repairs be promptly sent to the shops. By another rule it was required that car inspectors should report to and receive their instructions from the master mechanic, but should obey all orders of the superintendent or trainmaster and report to them as they should direct; that they should make such repairs as might be required and send to the shops all cars not fit for service; and such rule then provided, that "when making repairs to cars standing on main track or side-track, they must protect themselves by placing a blue signal in the draw-head or on the platform or step of the car, at each end of the train, to prevent the cars from being coupled to or moved while they are making repairs:" *Held,* that such latter part of the rule had no application to cars sent to the yard or repair-shop and standing in the yard, but to those only which were on the main or side-track.

2. NEGLIGENCE— *cars in repair yard— omission of servant to place signals upon them—as required by a rule of the company.* A servant of a railway company, while assisting in repairing a car in the repair yard, was injured by the engineer upon an approaching train running against such car without any signal or notice. A rule of the company required servants, while repairing cars standing on the main or side-tracks, to place a blue flag on each end of the train to protect themselves from injury by the coupling on to such cars. Another rule required that cars sent to the yards for repairs should be marked with chalk, which was to be erased when the repairs were completed; and such mark was placed upon the car being repaired, but no blue flag was placed upon either end of such car: *Held,* that the failure of the servant to place such flag on the car was not such negligence on his part as to preclude a recovery by him.

3. SPECIAL FINDINGS—*as controlling the general verdict—and herein, how to direct a special finding.* In an action in such case the jury found a general verdict in favor of the plaintiff, and in response to special questions found that no flags were displayed on the car to warn the engineer on the approaching train of the fact that the plaintiff was

under the car, and that plaintiff did not ask for or inquire after the signal flags to get them for his own protection, and also that the rules of the company provided that servants, when making repairs to cars standing on the main or side-tracks, should protect themselves by placing a blue signal in the draw-head or on the platform of the car, at each end of the train, to prevent cars from being coupled to or moved while they were making repairs. The court, on the special findings, rendered judgment for the defendant: *Held,* that the court erred, as such findings did not show that the plaintiff was guilty of negligence.

4. If the defendant company desired a special finding of the jury on the question of the plaintiff's care or negligence, it should have submitted to them whether or not it was his duty to put out blue flags on the car he was repairing, or whether or not the rules of the company provided for putting out such signals when making repairs at the place such car was standing, or on all cars being repaired.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. CRAIG & CRAIG, for the plaintiff in error.

Mr. JOHN T. DYE, and Mr. WILLIAM H. DYE, for the defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was an action on the case, by plaintiff in error, against defendant in error, for a personal injury, alleged to have resulted through the negligence of its employes. On the trial the jury returned a general verdict for plaintiff, and assessed his damages at $500.

Both parties requested, and the trial court directed, that the jury find specially upon several questions of fact. Those submitted at the request of the defendant, and the finding of the jury on the same, are as follows:

Q. "Did the injury complained of in the declaration result from the moving up a car on a track in the yards of the defendant in attempt to attach a locomotive thereto while Quick was at work making repairs under the car?—Yes.

Q. "Were any flags displayed on said car, or in front of the same, to warn the engineer of the approaching train of the fact that plaintiff was at work under said car?—No.

Q. "Was any signal or warning of any kind given to the engineer of the approaching train of the fact that the plaintiff was at work under said car? If so, what signal or warning was given?—No.

Q. "Were there blue flags in the yard of said company, where said accident occurred, at the time Quick went under said car, provided for the express purpose of being used as signals of danger when car repairers or inspectors should be at work under cars?—No.

Q. "At the time Quick went under said car to work, did he know these blue flags were in the yard?—Yes.

Q. "Did the rules of the defendant company provide, that when making repairs to cars standing on the main track or side-track, they must protect themselves by placing a blue signal in the draw-head or in the platform of the car, at each end of the train, to prevent the cars from being coupled to or moved while they are making repairs?—Yes.

Q. "Did the plaintiff, Quick, at the time he went under the car, before the happening of the accident complained of, display any blue flag or signal of any kind to protect himself from danger of the car being coupled onto or moved while he was under the car?—No.

Q. "Did he ask for or inquire after the signal flags, to get them for his own protection?—No."

On motion of the defendant, judgment was entered for it on the special findings, notwithstanding the general verdict. That judgment was affirmed in the Appellate Court.

The only controversy in this court is as to whether or not the special findings on behalf of defendant are so inconsistent with the general verdict as to justify the judgment rendered by the circuit court.

It is insisted on behalf of defendant in error, that the special findings of the jury convict the plaintiff of such negligence on his own part as will bar his right of recovery, regardless of the negligence of the employes of the defendant, and upon that theory the judgment of affirmance in the Appellate Court is based.     There is nothing appearing on the face of the foregoing special findings to justify the claim that the jury found the plaintiff guilty of negligence.     To warrant any such conclusion it must be assumed that he was, at the time of the injury, repairing a car *"standing on the main track or side-track."* The evidence clearly shows the contrary to be true.     He was employed by the company in its shops in the city of Mattoon, as a carpenter, and it was, among other things, his duty to assist in the repair of cars at that place, under the directions of one Lietchen, foreman of the car department.     On the 7th of November, 1885, a freight car loaded with stone was placed in the shop-yard for repairs, and plaintiff and a fellow-workman were directed by Lietchen to repair it, by putting in a pair of wheels.     While so engaged, being under the car, an engine backed into the yard, and in attempting to couple onto the car caused the injury sued for.     There is no dispute as to the fact that the car was at this time in the repair-yard, some distance north of the main track and switches.     It appears from the evidence, that the manner of repairing cars at that place was, when the car inspector found a car disabled, and he could not repair it on the track or side-track, he sent it to the shop or yard, there to be repaired.

Rule 198 of the company was introduced in evidence, as follows : "Yardmasters must see that the yard is kept in good order, that the cars passing are properly inspected, and that all cars requiring serious repairs are promptly sent to the shops."

One of the strongly contested questions of fact on the trial was, whether or not it was made the duty of plaintiff, by the rules of the company or by instructions from his foreman, to

22—130 ILL.

put a blue flag or signal on the car being repaired, to protect himself from danger while so engaged. The plaintiff contended that the rule was, when a car was sent to the shops or repair-yard, to put on it a chalk mark indicating the repair needed, which remained until the work on it was completed, and then erased; that until the chalk mark was taken off the car could not be rightfully moved, and that the car in question had been so marked, and the marks not erased at the time he received his injury. On the contrary, defendant insisted that the blue flag or signal was to be placed on all cars being repaired, wherever located; that it was the duty of the workmen engaged in repairing any car to put out such flag or signal for their own protection, and that engineers, and all other employes whose duty it was to move cars, had a right to take out all cars not displaying such flags or signals. On this issue the company introduced in evidence this rule:

"Car inspectors will report to and receive their instructions from the master mechanic, but will obey all orders of the superintendents or train master, and report to them as they direct. \* \* \* They will make such repairs as may be required, and send to the shops all those not fit for service. They must give special attention to the passenger, baggage, mail and express cars, and permit none to leave their stations that are not in good running order. When making repairs to cars standing on main track or side-track, they must protect themselves by placing a blue signal in the draw-head or on the platform or step of the car, at each end of the train, to prevent the cars from being coupled to or moved while they are making repairs."

It seems too clear for argument, that this rule can not be applied to the car on which plaintiff was working when injured. It applies only to "cars standing on main track or side-track." This car was on neither, but in the repair-yards. There is a manifest reason why the rule should be made applicable to the one and not the other.

It is insisted, however, that, regardless of the applicability of the printed rules, the proof shows that by the instructions of his foreman, and by the usual and recognized custom among the workmen, it was the duty of plaintiff to have displayed such signals, or to see that it was done. On this question of fact no opinion need be expressed ; but if it should be admitted, the concession would not help defendant's case on this record. In that case, under the former practice, it would have been the duty of the trial court to set aside the general verdict, as contrary to the evidence. Under the present statute, if the jury had found that it was his duty, generally, to have put up such signals, judgment might have been properly rendered for the defendant on such finding, notwithstanding the general verdict. But the jury made no such finding. What they did find was, that the rules of the defendant provided, that when making repairs to cars *standing on the main or side-tracks,* the workmen must protect themselves by placing signals, etc. Each of the special findings in this case may be true, and yet the plaintiff be entirely free from negligence, for the simple reason he was not repairing a car on the main or side-tracks. If the defendant desired a special finding of the jury on the question of plaintiff's care or negligence, it should have submitted to them whether or not it was his duty to put out blue flags on that car, or whether or not the rules provided for putting out such signals when making repairs at the place this car was standing, or on all cars being repaired.

The circuit court erred in entering judgment on the special findings, and for that error the judgment of the Appellate Court must be reversed. The cause will be remanded to that court, with directions to reverse the judgment of the circuit court, and remand the cause to that court, with directions to it to entertain a motion for a new trial by defendant, if one shall be made, and if overruled, to enter judgment on the general verdict.

*Judgment reversed.*